# Lockett *v.* The State.

### Indictment for Arson.

| 63 | 5 |
| 124 | 47 |

1. *Sufficiency of indictment in description of building burned.*—In an indictment for arson (Code, § 4347), the building burned may properly be described as "the jail of Talladega county, which said jail or building was erected for public use," without further description or averment of ownership.

2. *Accomplice, examined as to matters criminating himself.*—When an accomplice consents to testify as a witness for the State, he can not refuse to answer a question because his answer may criminate himself; but this rule only extends to questions concerning matters about which he has already testified.

3. *Arson; what constitutes.*—If a prisoner, confined in the county jail, set

fire to the building, with the intent only to burn a hole through which he may escape, not intending that the building should be further damaged, he is guilty of arson.

4. *Admissibility of indictments as evidence.*—The indictments pending against the prisoners at the time of their attempt to escape by burning the jail, are admissible evidence against one of them on his trial under indictment for the arson.

5. *Accomplice; how corroborated.*—When a conviction of felony is sought on the testimony of an accomplice, there must be corroborative evidence tending to connect the defendant with the commission of the crime (Code, § 4894); and when there is such corroborative evidence, it is for the jury to decide the effect to which it is entitled.

FROM the Circuit Court of Talladega.

Tried before the Hon. LOUIS WYETH.

The indictment in this case contained two counts; the first charging that John Lockett and Joseph Gantt, *alias* Joe Gantt, "did willfully set fire to, or burn, the jail of Talladega county, which said jail was erected for public use;" and the second, that they "did willfully set fire to, or burn, the jail of Talladega county, of State aforesaid, which said jail or building was erected for public use." No objection was raised to the indictment, so far as the record shows. John Lockett, being on trial alone, pleaded not guilty, and was tried on issue joined on that plea. During his trial he reserved the following bill of exceptions to the several rulings of the court:

"The State introduced Richard Cox as a witness, who testified, that he knew the defendant, and also knew Joe Gantt, and had been in jail with them for several months; that he was in jail sometime in August, 1879, when it was alleged to have been set on fire; that Joe Gantt, John Lockett, Frank Dawson, William Herd, Gus Wynn and himself, said Cox, were all in the same cell; that he saw Joe Gantt kindle the fire, by which the jail was burned; that the fire was kindled by means of matches, which said Gantt had about his person; that John Lockett did not take any part in the burning, except to hand Gantt some splinters near the door of the jail, which Gantt asked him to hand to him, and which Gantt used in kindling the fire. Said witness stated, on cross-examination, that he had been indicted separately for burning the jail, but at a different time, and was imprisoned on a charge of assault and battery with a weapon at the time of the alleged burning with which the defendant is charged; that 'the scheme' of burning the jail, as a means of escape, 'had been talked about among us all,' and the plan was to burn a hole, and escape through the opening thereby made. The defendant's counsel asked the witness, if he did not assist Joe Gantt to kindle the fire by which the jail was burned; but the court thereupon stated to the witness, that

he was not bound to answer that question, unless he chose to do so; and the witness refused to answer the question. The defendant asked the court to compel the witness to answer the question, and excepted to the refusal of the court to do so. The witness further testified, that he was lying down on the floor of the cell, and saw Joe Gantt kindle the fire.

"Frank Dawson, another witness for the State, testified that he was in the jail at the time it was said to have been burned; that it was set fire to one night in August, 1879; that Joe Gantt was the man who kindled the flame; did not see John Lockett take any part in kindling the fire; heard Gantt ask him to hand him some splinters, but did not know whether he did so or not. Witness stated, on cross-examination, that the scheme of burning the jail, for the purpose of escaping, had been discussed by all the prisoners, himself among the number, for several months before it was done; did not remember whether or not any thing had been said among the prisoners concerning the burning the day before it occurred; was lying on his bed in the cell, and looking at Gantt, at the time the splinters were lit by Gantt as aforesaid.

"Gus Wynn, another witness for the State, testified that he was in the jail at the time it is charged that John Lockett and Joe Gantt set fire to it; saw Gantt strike a match, and kindle the flame; John Lockett handed him some splinters; the burning occurred in August, 1879; the fire had not made much progress when Mr. Edwards came and put it out. Witness stated, on cross-examination: 'The scheme of burning the jail, and making our escape, had been talked about among the prisoners for some time before it was tried. Joe Gantt, John Lockett, Frank Dawson, Richard Cox, William Herd and myself were all confined in the same cell. Our plan was, to make a hole in the wall by burning, and escape through it. All the prisoners understood the plan, and agreed to it. We were all awake when the flame was being kindled by Gantt.' Witness stated, that he saw Gantt kindle the fire, and heard him ask some one for some splinters, and thinks it was John Lockett who handed them to him.

"Joseph Edwards, another witness for the State, testified that he was deputy-sheriff, and was in charge of the jail; was aroused one night in August, 1879, by the alarm of fire; went to the cell in which the prisoners were confined, and found that the fire had made some progress in the wall, and had burned a hole about the size of a man's hat; immediately called in one H. C. Bingham, who lived near by, and, after changing the prisoners to another cell, extinguished

the flames. Witness stated, that Joe Gantt, John Lockett, Gus Wynn, Frank Dawson, Richard Cox and William Herd were all confined together in the cell when the burning occurred, and were all awake when he went in; but he did not know how the fire started, nor who kindled it. The State then offered to read in evidence the indictment under which the defendant had been arrested, and under which he was imprisoned at the time of the burning of the jail; to which the defendant objected, as illegal, incompetent, and irrelevant testimony; but the court overruled the objection, and the defendant excepted. The State then offered and read in evidence a similar indictment against Joe Gantt, under which he was confined in jail at the time of said alleged burning. The defendant objected, and moved to exclude the same from the jury, because it was illegal, irrelevant, and incompetent evidence; but the court overruled the objection and motion, and the defendant excepted.

"This being all the evidence, the defendant requested the court to give the following charges to the jury, which were in writing: 1. 'If the jury believe the evidence, they must find the defendant not guilty.' 2. 'If the jury believe, from the evidence, that all the witnesses examined by the State, as to the defendant's connection with the burning, were accomplices in the commission of the offense, then they must find the defendant not guilty.' 3. 'If the jury believe, from the evidence, that Edwards only proves the fact that there was a fire kindled in the jail, of which the defendant is charged; and that the defendant and the witnesses examined by the State, were in the jail with the defendant; then the evidence of Edwards would not be corroboration sufficient to convict on evidence of accomplices alone.'" The court refused each of these charges, and the defendant excepted to their refusal.

"The court gave the following written charge, at the instance of the State: 'Although the jury may believe, from the evidence, that all the inmates had talked about burning the jail for the purpose of escape; yet, if they are satisfied from the evidence, beyond any reasonable doubt, that one or more of them took no part in the setting fire to it when it was done, but withdrew, and took no part therein, then they would not be accomplices to the burning; and the jury must look to all the evidence, to determine whether Richard Cox and Gus Wynn did take part in said burning, and were, or were not, accomplices." To this charge, and to each separate part thereof, the defendant objected and excepted. The court charged the jury, also, *ex mero motu*, as follows: Although all the parties in the jail conspired and agreed to

[Lockett v. The State.]

burn it, yet, if any one or more of them, before the fire was set to the jail, withdrew from the conspiracy or agreement, such person so withdrawing would not be an accomplice; and if the jury believe, from the evidence of such witnesses (if they find there are such), beyond all reasonable doubt, that the defendant did set fire to and burn, or did aid and assist Joe Gantt in burning the jail, then they must find him guilty.' To this charge also, and to each separate part thereof, the defendant objected and excepted."

BOWDON & KNOX, for the defendant.—1. The indictment is fatally defective, because it contains no averment that the jail was the property of Talladega county.—*Martha v. The State*, 26 Ala. 72.

2. When an accomplice is used as a witness on the part of the State, this necessarily works his acquittal of any complicity in the offense, and in effect is an indemnity against any future prosecution for it. Standing in this position, he can not refuse to answer any relevant question, although the answer may criminate himself. Any other rule might work grievous injustice, and abrogate the statute as to the testimony of accomplices.—Code, §§ 4893, 4895; 1 Bishop's Crim. Law, § 264.

3. Joe Gantt was not on trial, and the indictment against him was clearly irrelevant.

4. The evidence showed that there was no design or intention to burn the jail: the whole plan and purpose was to burn a hole through which to escape, and this does not constitute the offense denounced by the statute.—*People v. Cattaral*, 18 Johns. 115; *State v. Mitchell*, 5 Ired. Law, 350. The case of *Luke v. The State*, 49 Ala. 30, is at variance with these authorities; but it is wrong in principle, and ought to be overruled.

5. The rulings of the court as to the testimony of accomplices, both in the charges given, and in the refusal of the charge asked, are in violation of the statute.—Code, § 4895; 1 Bishop's Crim. Law, § 264; *Montgomery v. State*, 40 Ala. 684; *Smith v. State*, 59 Ala. 104. The charges given by the court are also erroneous, because they assume a fact of which there was no evidence—that some of the prisoners withdrew from the plan to burn the jail.

H. C. TOMPKINS, Attorney-General, for the State, cited Code, 995, Form No. 35; *Luke v. The State*, 49 Ala. 50; *State v. Roe*, 12 Vermont, 93; 1 Wharton's Amer. Cr. Law, § 807; 2 *Ib.* § 1663, note 2, and authorities there cited.

[Lockett v. The State.]

·MANNING, J.—We think there was no error in holding that the indictment was not obnoxious to the objection, that the ownership of the building to which fire was set was not sufficiently averred. In the form prescribed by the statute (Code of 1876, p. 995, No. 35), the charge is, that "A. B. willfully set fire to, or burned, in the night time, a *dwelling-house of C. D.*, in which," &c. This is the manner in which the ownership is alleged. In the indictment before us, the accusation is, that defendant "did willfully set fire to, or burn, the *jail of Talladega county*," &c. ' This, if there were no more, would be a sufficient averment of the ownership, according to the statutory precedent, each county in the State being a body corporate.—Code, § 815. But the indictment goes further, and says, "which said jail or building was erected for public use." The prosecution is under a statute which makes "any person who willfully sets·fire to, or burns, any church, meeting-house, college, academy, jail, or other building erected for public use," guilty of arson in the second degree; and the averment, corresponding with this description of the jail, as the jail of Talladega county, and "a building erected for public use," clearly shows that the structure burned was the property of another than the defendant.—*The State v. Roe*, 12 Vermont, 93.

2. An accomplice, who consents to testify for the State, that a defendant committed the act for which he is indicted, can not shield himself from answering any relevant question concerning it, under the rule that he shall not be required to criminate himself. The principle of that rule, said the Supreme Court of North Carolina, "does not embrace this case. For the witness is an *accomplice*, who is allowed to give evidence in favor of the State, with the express understanding that he is to *disclose his own guilt*. Consequently, a rule which was adopted in order to prevent a party from being required to criminate himself, and to avoid being criminated by a communication made to his attorney, has no application."—*State v. Condry*, 5 Jones' Law, 420. "If a witness consents to testify at all, so as to criminate himself as well as defendant, in the matter on trial, he must answer all questions legally put to him, concerning that matter. He can not be allowed to state such facts only as he pleases to state, and to withhold other facts." For, thereby, "injustice might be done to the defendant, either by keeping back of testimony which would tend directly to his acquittal, or which would so discredit the witness as to induce the jury wholly to disregard his previous testimony."—*Commonwealth v. Price*, 10 Gray, 476.

Even in causes between individuals, where there can be no

understanding, express or implied, that the witness should not be prosecuted for an offense of which his testimony might disclose that he was guilty: if, being aware that he is not obliged to answer a question which may incriminate him, the witness does answer it, "he can not afterwards take the objection to any further question relative to the whole transaction."—*Dixon v. Vale*, 1 Car. & P. 278. And in *East v. Chapman* (2 Car. & P. 570), ABBOTT, C. J., said to a witness in that situation: "You might have objected to giving any evidence; but, having given a long history of what passed, you must go on; otherwise, the jury will only know half of the matter." It can not be tolerated that a person testifying, after stating material facts bearing upon the case, and favorable to one party, shall, when cross-examined in reference to the same subject, decline answering by reason of his privilege not to incriminate himself.—*Foster v. Pierce*, 11 Cushing, 437; *Brown v. Brown*, 5 Mass. 320. His obligation to answer, however, extends only to questions concerning the matter he has testified about, and not to those concerning other matters, though they come within the scope of the cause.—*Chamberlain v. Willson*, 12 Vermont, 491; *The State v. K——*, 4 N. H. 562.

3. The question, whether the burning of a hole, by prisoners, in a jail, for the purpose only of enabling them to escape from it, but with the intent that the building should not be any further damaged, constitutes the crime of arson or not, is a question on which there has been much difference of opinion. Our predecessors, after careful consideration, gave to it an affirmative answer.—*Luke v. State*, 49 Ala. 30. We regard this as the law in this State, and think the court below did not err in holding that such a burning was arson.

4. In the same case it was ruled, that the indictments preferred against prisoners who were in the jail at the time of the endeavor to break out, were admissible evidence for the prosecution. These documents tended to show both the legality of their commitment and detention, and the nature of the offenses, from responsibility for which the defendant, by setting fire to the jail, was aiding them to escape.

5. The statute is express, that "a conviction of felony can not be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense: such corroborative evidence, if it merely shows the commission of the offense, or the circumstances thereof, is not sufficient."—Code of 1876, § 4894 (4193). It is for the jury to decide, when there is in a cause any such corroborative evidence, what effect it is entitled to; and it is unnecessary to anticipate

what evidence of that kind will be adduced or offered on a future trial of appellant, or what instruction in respect of it shall be given to the jury.

For the error of informing the witness and holding that he was not bound to answer a relevant question, the answer to which might tend to incriminate him, the judgment must be reversed, and the cause be remanded. Let the prisoner remain in custody, till discharged by due course of law.

